# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ERNST FORD, | : | CIVIL ACTION |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| OFFICER TERRANCE SANDERS, et al., | : | NO. 07-CV-00778 |
| Defendant. | : |  |

**FILED**

FEB 1 5 2008

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## MEMORANDUM OPINION

**TIMOTHY R. RICE**                                         **February 14, 2008**
**U.S. MAGISTRATE JUDGE**

In this action under 42 U.S.C. § 1983, plaintiff Ernst Ford alleges defendants Scot Murphy and Terrance Sanders, City of Philadelphia police officers, violated his constitutional rights by retaliating against him for protesting police brutality, and using excessive force during his arrest. Defendants seek summary judgment on Ford's claims or, in the alternative, qualified immunity. This case, however, features myriad genuine issues of material facts, which require me to deny defendant Officer Sanders's motion for summary judgment and qualified immunity, and deny in part, and grant in part, defendant Sergeant Murphy's motion for summary judgment and qualified immunity.

I.      Background

Ford's allegations involve excessive force and retaliation by police in connection with a protest at 51st and Market Streets on July 2, 2005. Ford participated in the protest and was carrying a sign or a flag. Philadelphia Police civil affairs officers monitored the protest, and Officer Sanders, Sergeant Murphy, and Officer Jason Somerville arrived at the scene in response to a police call for assistance.

Deposition testimony about the police conduct conflicts, and therefore, will be summarized in the light most favorable to Ford.  A protest against police brutality was interrupted by the police while protestors chanted: "no justice, no peace."  See Ford Dep. at 11:20, 28:15.  Sanders knew the nature of the protest because he stated it was announced at roll call.  See Sanders Dep. at 71:11 to 73:22.  When protestors refused to disperse, police called backup to assist.  See Ford Dep. at 23:6-18.  Officer Sanders responded and approached Ford, stating: "I heard you started all of this."  See Ford Dep. at 29:5-29:7.  Officer Sanders punched Ford in the face after reaching for Ford's poster.  See Ford Declaration; Ford Dep. at 29:7.

The parties agree Ford fell to the ground, landing on his back, but disagree as to the events prior to the fall.  See Defendants' Motion for Summary Judgment at 5, Ford v. Sanders, et al., No. 07-778 (E.D. Pa. filed Jan. 17, 2008) (citing Sanders Dep. at 118) [hereinafter Defendants' Motion]; Plaintiff's Opposition to Defendants' Motion for Summary Judgment at 4, Ford v. Sanders, et al., No. 07-778 (E.D. Pa. filed Jan. 31, 2008) [hereinafter Plaintiff's Opposition].  According to Ford, after he fell to the ground, officers surrounded Officer Sanders, other officers, and Ford.  Officer Sanders "instructed [officers] to hold [Ford's] hands and [] feet," and "kept punching [Ford] in [his] face."  See Ford Dep. at 24:4-6.  Police secured Ford's arms and legs.  See Plaintiff's Opposition at 5.  Officers Velez and Somerville used their batons on Ford.  See Defendants' Motion at 6.  Sergeant Murphy kicked Ford in the head while he was on the ground.  See Ford Dep. at 24:16-24:19.  Defendants deny Ford's version of the facts and claim they acted reasonably to subdue Ford, who had initiated an assault on police.

The parties agree Ford was placed under arrest, transported by police to Fitzgerald Mercy Hospital, and refused medical treatment.  Ford was then transported to Southwest Detectives to

process his arrest. Ford was charged with aggravated assault, failure to disperse, possession of an instrument of crime, terroristic threats, simple assault, recklessly endangering another person, obstruction of the administration of government, resisting arrest, two counts of disorderly conduct, two counts of obstruction of the highway, and conspiracy. He was convicted of two counts of simple assault and acquitted of the other charges.

On March 1, 2007, Ford, acting pro se, commenced this suit against the City of Philadelphia and the "Philadelphia Police." See Plaintiff's Complaint, Ford v. City of Philadelphia, No. 07-778 (E.D. Pa. filed Mar. 1, 2007). On September 19, 2007, I appointed counsel for Ford. See Order, Ford v. City of Philadelphia, No. 07-778 (E.D. Pa. Sept. 20, 2007). On October 30, 2007, I granted Ford's Motion for Leave to File a Second Amended Complaint. See Order, Ford v. Sanders, et al., No. 07-778 (E.D. Pa. Oct. 30, 2007). Ford served defendants Sergeant Murphy and Officer Sanders with the Second Amended Complaint on November 9, 2007. Ford seeks damages under 42 U.S.C. § 1983 based on defendants' alleged First and Fourth Amendment violations, alleging Ford suffered physical and emotional injuries.

II.   Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing the record reveals no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party must go beyond the pleadings to set forth specific facts showing there is a genuine issue for trial.

Id. However, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts;" it must produce competent evidence supporting opposition. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). I must resolve all justifiable inferences in the non-moving party's favor. Sommer v. Vanguard Group, 461 F.3d 397, 403 (3d Cir. 2006). I may not consider evidence on a motion for summary judgment that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 n.13 (3d Cir. 1999). I may not weigh the evidence or make credibility determinations. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Therefore, "where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

To defeat a motion for summary judgment, factual disputes must be both material and genuine. Anderson, 477 U.S. at 248. An issue is "material" if it is predicated upon facts that are relevant and necessary and that may affect the outcome of the matter pursuant to the underlying law. Id. An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 248-49. Summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, because such a failure as to an essential element necessarily renders all other facts immaterial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Thus, if there is only one reasonable conclusion from the record regarding the potential verdict under the governing law, summary judgment must be awarded to the moving party. Anderson, 477 U.S. at 250.

III.   Discussion

Section 1983 provides a civil remedy for the violation of a constitutional right, privilege,

4

or immunity by any person acting under color of state law.  42 U.S.C. § 1983 (2007).  Ford

alleges, and the defendants do not challenge, that defendants acted under color of state law.

Accordingly, I focus on Ford's allegations that defendants' use of excessive force violated his

First and Fourth Amendment rights under § 1983.

    A.  <u>Effect of Ford's Conviction on § 1983 Claims</u>

        Defendants assert that because Ford was convicted of two counts of simple assault, his §

1983 claims based on the First and Fourth Amendments cannot stand because any success in his

civil suit would imply the invalidity of his conviction.  <u>See</u> <u>Heck v. Humphrey</u>, 512 U.S. 477,

486-87 (1994).  In <u>Heck</u>, the Court examined the relationship between a plaintiff's § 1983 claim

and his prior conviction.  <u>Davis v. Berks County</u>, 2007 WL 516128, at *6 (E.D. Pa. Feb. 8, 2007)

(Stengel, J.) (discussing <u>Heck</u>, 512 U.S. 477).  Plaintiff was convicted of voluntary manslaughter

and brought a § 1983 claim alleging prosecutors and state police conducted an unlawful

investigation and knowingly destroyed exculpatory evidence.  <u>Heck</u>, 512 U.S. at 478-79.  The

Court held:

> "when a state prisoner seeks damages in a § 1983 suit, the district court must
> consider whether a judgment in favor of the plaintiff would necessarily imply the
> invalidity of his conviction or sentence; if it would, the complaint must be
> dismissed unless the plaintiff can demonstrate that the conviction or sentence has
> already been invalidated. But if the district court determines that the plaintiff's
> action, even if successful, will not demonstrate the invalidity of any outstanding
> criminal judgment against the plaintiff, the action should be allowed to proceed, in
> the absence of some other bar to the suit."

<u>Heck</u>, 512 U.S. at 487;  <u>Davis</u>, 2007 WL 516128, at *6.  The Court barred the plaintiff's § 1983

action because his claims "necessarily required the plaintiff to prove the unlawfulness of his

conviction," <u>Heck</u>, 512 U.S. at 486, and therefore, challenged his underlying criminal conviction,

id. at 490.  Thus, "Heck limits using a Section 1983 action to challenge a conviction that has not been reversed."  Davis, 2007 WL 516128, at *6.  Ford's case is distinguishable because it alleges excessive force, which does not necessarily undermine his convictions for simple assault.

For example, in Nelson v. Jashurek, the United States Court of Appeals for the Third Circuit upheld a § 1983 action for excessive force despite plaintiff's underlying conviction for resisting arrest.  109 F.3d 142 (3d Cir. 1997).  The Court reasoned: "the fact that [defendant] was justified in using 'substantial force' to arrest [plaintiff] does not mean that he was justified in using an excessive amount of force . . . [thus] we do not see why a judgment in [plaintiff's] favor [in a § 1983 claim] would throw the validity of his conviction into doubt."  Id. at 145-46.  Similarly, in Green v. New Jersey State Police, 246 Fed.Appx. 158, 162, 162 n.8 (3d Cir. 2007), the Court explained that, under Heck, plaintiff's guilty plea for aggravated assault would not bar his excessive force claim because admitting he struck or kicked "two of the officers would not, as a matter of logic, necessarily conflict with a finding of excessive force."  Green, 246 Fed.Appx. at 162 n.8; but cf. Jennings v. Fetterman, 197 Fed.Appx. 162, 164 (3d Cir. 2006) (plaintiff's excessive force claim would necessarily imply the invalidity of the conviction under Heck because an attempted homicide conviction meant the jury rejected plaintiff's self defense theory).

In addition, convictions involving aggravated assault, obstructing the administration of law, disorderly conduct and harassment do not preclude § 1983 excessive force claims.  See Davis, 2007 WL 516128, at *6 (aggravated assault);[1] DiJoseph v. City of Philadelphia, 947

---

[1] Although Davis involved use of excessive force by prison officials under the Eighth Amendment, it is applicable here.  The status of defendants as police officers does not alter the Heck analysis, and a holding in a prison case may be even more applicable because "the obvious security concerns inside the [prison's] close confines" are not at issue.  See Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir. 2002); Hammock, 2007 WL 3232115, at *5 n.11 (discussing Smith's

F.Supp. 834, 841 (E.D. Pa. 1996) (Brody, J.) (aggravated assault); <u>Hammock v. Borough of Upper Darby</u>, 2007 WL 3232115, at *4 (E.D. Pa. Oct. 31, 2007) (Davis, J.) (obstructing the administration of law); <u>Reynolds v. Smythe</u>, 418 F.Supp.2d 724, 733 (E.D. Pa. Mar. 9, 2007) (DuBois, J.) (disorderly conduct and harassment).[2]

In <u>Davis</u>, the court found the plaintiff's aggravated assault conviction for biting a correction officer precluded him from using § 1983 to challenge his conviction, but did not preclude him from challenging the officers' actions of choking, punching and kicking him, and slamming his head against a wall. <u>Davis</u>, 2007 WL 516128, at * 6. The court, "under the reasoning of <u>Nelson</u>, [found] a jury could still find the [defendant's] conduct objectively unreasonable even if [the plaintiff] was not justified in biting [the defendant]." <u>Id.</u>

Defendants' reliance on <u>Reynolds</u> is misplaced. In <u>Reynolds</u>, the court relied on the plaintiff's conviction for disorderly conduct and harassment to bar recovery under § 1983 for unlawful detention, false arrest, malicious prosecution, and retaliation. Nevertheless, the court denied the defendant's summary judgment motion on the excessive force claim. <u>See</u> <u>Reynolds</u>, 418 F.Supp.2d at 729-30, 733-35. Although the court found the plaintiff's nolo contendere plea barred the plaintiff from recovering under § 1983 for First Amendment retaliation, <u>Reynolds</u> is distinguishable because the alleged retaliatory act was plaintiff's arrest, <u>id.</u> at 732, whereas Ford

---

applicability in a Fourth Amendment excessive force case)

[2] Defendants also cite additional authority to support barring Ford's excessive force claim on <u>Heck</u> grounds. <u>See</u> Defendants' Motion at 14 (citing <u>Nicholson v. Kober</u>, 2007 WL 2011549 (W.D. Pa. July 6, 2007); <u>Garrison v. Porch</u>, 2007 WL 776799 (D. N.J. Mar. 9, 2007)). I do not find such cases persuasive in light of the Third Circuit's decision in <u>Nelson</u> and the Honorable Lawrence F. Stengel's decision in <u>Davis</u>. <u>See</u> <u>Nelson</u>, 109 F.3d 145-46; <u>Davis</u>, 2007 WL 516128, at *6.

is alleging defendants retaliated against him by using excessive force to physically beat him. Under this reasoning, Ford's claim does not invalidate his conviction for simple assault. See Nelson, 109 F.3d at 145-46.

Ford was convicted for simple assault against Officers Sanders and Velez, but the judge did not address the validity of the officers' actions during the incident. See Waiver Trial Transcript, Commonwealth v. Ford, No. CP-51-CR-0406002-2006, (Ct. Com. Pl. Phila. Oct. 23, 2006). Under the reasoning of Nelson and Davis, a jury could find defendants used excessive force under the Fourth Amendment or as retaliation under the First Amendment even if Ford was not justified in his actions. See Davis, 2007 WL 516128, at *6. To hold otherwise would imply an officer could constitutionally use excessive force against any person who committed an offense, no matter how inconsequential. See Hammock, 2007 WL 3232115, at *3 n.5.[3]

B. First Amendment Retaliation Claim

Ford alleges defendants infringed upon his First Amendment right by beating him in retaliation for protesting police brutality. "[A]n individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights." Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997). To prove his First Amendment retaliation claim, Ford must show "(1) that [he] engaged in protected activity; (2) that the government responded with retaliation; and (3) that the protected activity was the cause of the retaliation." Estate of Smith v. Marasco, 318 F.3d 497,

---

[3] Under Pennsylvania law, "[a] person is guilty of simple assault if he . . . attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa. C.S.A. § 2701. At trial, Ford cannot contest his convictions for simple assault, i.e., he attempted to cause, or intentionally, knowingly, or recklessly caused bodily injury to Officers Sanders and Velez.

512 (3d Cir. 2003).

First, all speech is protected by the First Amendment except for a few narrow categories deemed unworthy of full First Amendment protection – such as obscenity, fighting words, and libel. Eichenlaub v. Township of Indiana, 358 F.3d 274, 282-83 (3d Cir. 2004). "The First Amendment protects a significant amount of verbal criticism and challenge directed at [] police officers." City of Houston v. Hill, 482 U.S. 451, 461 (1987). Ford participated in a protest of police brutality, and the First Amendment protects this activity. There is a genuine issue of material fact whether the protest finished prior to defendants arrival, whether defendants were provoked by Ford's conduct even if the protest had ended, and whether Ford was protesting in the street when the defendants arrived, especially considering his acquittal of the obstruction of the highway charge.

Second, viewing the evidence in the light most favorable to Ford and resolving justifiable inferences in Ford's favor, a reasonable jury could conclude Officer Sanders beat Ford in retaliation for his protected speech. Ford, however, failed to set forth specific facts showing a genuine issue of material fact exists that Sergeant Murphy retaliated against Ford for his protected speech. Defendants maintain police arrested Ford, "not for participating in a demonstration, but for hitting and punching Officers Sanders and Velez." See Defendants' Motion at 13. Defendants also argue their use of proper police department procedures and policies for the arrest show the protest was not a motivating factor to use force. See Defendants' Reply to Plaintiff's Opposition at 5, Ford v. Sanders, et al., No. 07-778 (E.D. Pa. filed Feb. 7, 2007). These views, however, overlook the distinction between the physical beating and the arrest, as the underlying retaliatory conduct.

9

Viewing the facts in the light most favorable to Ford, Officer Sanders has not met his burden of showing no genuine issue of material fact exists on this element of Ford's retaliation claim.  Sanders admitted he learned the nature of the protests at roll call.  Upon arrival at the protest, he stated "I heard you started all this," before reaching for Ford's sign and punching him in the face.  Other officers formed a circle around Ford, Officer Sanders, and other officers to allow the beating.  Only a jury can resolve the true reasons for Officer Sanders's actions. Although these facts preclude summary judgment, Ford will bear a significant burden at trial to prove Officer Sanders's liability.  See Nelson, 109 F.3d at 146.

Ford, however, offers no evidence that Sergeant Murphy knew the nature of the protest to support his allegation Sergeant Murphy retaliated against him for protesting.  He states Sergeant Murphy's denial of any knowledge of the nature of the protest is an issue of credibility for the jury.  See Plaintiff's Opposition at 7.  Ford "must do more than simply show that there is some metaphysical doubt" that Murphy did not know the nature of the protest.  See Matsushita Elec. Indus. Co., 475 U.S. at 586.  Thus, Ford did not show a genuine issue existed for trial on this element of his retaliation claim against Sergeant Murphy and summary judgment is appropriate. See Celotex Corp., 477 U.S. at 322-23.

Third, the timing of Officer Sanders's alleged retaliatory action could be construed as "unusually suggestive" of retaliatory motive, establishing the inference of a causal link.  See Estate of Smith, 318 F.3d at 512; Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989). Viewing the evidence in the light most favorable to Ford, a reasonable jury could conclude that the proximity of Officer Sanders arrival at the protest, his statement to Ford, and the alleged beating, establish the protected activity was the cause of the retaliation.  Thus, a reasonable jury

10

could find Officer Sanders violated Ford's First Amendment rights.

Officer Sanders's motion for summary judgment on Ford's First Amendment claim is therefore denied, and Sergeant Murphy's motion for summary judgment on this claim is granted.

C. Fourth Amendment Claim

Ford alleges defendants' use of excessive force violated his Fourth Amendment rights. "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and it was unreasonable." Estate of Smith, 318 F.3d at 515 (quoting Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999)). Defendants do not dispute a seizure occurred in this case; the only question is whether the use of force was reasonable.

"The 'reasonableness' standard articulated in the Fourth Amendment requires a highly fact-specific inquiry into the circumstances of each particular case," Hammock, 2007 WL 3232115, at *4, and "should frequently remain a question for the jury," Abraham, 183 F.3d at 290. The reasonableness inquiry focuses on whether the officers' actions are "objectionably reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." Graham v. Connor, 490 U.S. 386, 397 (1989); Hammock, 2007 WL 3232115, at *4. Thus, an objectionably unreasonable use of force will not be constitutional due to an officer's good intentions and any bad intentions will not transform an objectionably reasonable use of force into a constitutional violation. See Graham, 490 U.S. at 397. The following factors may be considered in determining reasonableness: 1) the severity of the crime; 2) whether the suspect poses an immediate safety threat to the officers or others; 3) whether the suspect actively resisted or evaded arrest, see Graham, 490 U.S. at 396; 4) whether the suspect is violent or dangerous; 5) the duration of the action; 6) whether the action occurred

11

during the arrest; 7) whether a possibility exists the suspect is armed; and 8) the number of people the officers must contend at once, see Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

The parties offer conflicting evidence on whether the force used by defendants was objectively reasonable. Although Ford's conviction for simple assault establishes defendants were justified in exerting some force, the evidence varies on the level of force necessary. Ford alleges Officer Sanders punched him and continued to punch him when he fell to the ground, and police shielded him to allow Sergeant Murphy to kick him in the head. Similarly, the parties offer conflicting evidence on the Graham and Sharrar factors, including whether Ford posed an immediate threat to the officers or others, and whether Ford was resisting arrest, especially considering his acquittal on that charge. See Graham, 490 U.S. at 396; Sharrar, 128 F.3d at 822.

Defendant Sergeant Murphy argues he had no physical contact with Ford so the excessive force claim against him should be dismissed as a matter of law. See Defendants' Motion at 15. First, there is a genuine issue of disputed fact whether Sergeant Murphy kicked Ford in the head. Second, "[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983," provided he had a "realistic and reasonable opportunity" to intervene. Hammock, 2007 WL 3232115, at *5 (quoting Smith, 293 F.3d at 650-51). Thus, he nevertheless may be liable for the actions of his co-defendant if he had a "realistic and reasonable opportunity" to intervene on Ford's behalf. See id. This is a quintessential jury question.

Defendants' motion for summary judgment on Ford's Fourth Amendment claim is therefore denied.

12

D. Qualified Immunity

Even assuming a constitutional violation is found, defendants claim they are entitled to qualified immunity. See Defendants' Motion at 17. Qualified immunity is an entitlement not to stand trial, not a defense from liability. Saucier v. Katz, 533 U.S. 194, 200 (2001). Qualified immunity is a question of law to be decided by the court, Doe v. Groody, 361 F.3d 232, 238 (3d Cir. 2004), using a two-step inquiry: (1) whether the facts, taken in a light most favorable to the plaintiff, establish a constitutional violation; and (2) if a constitutional violation is established, whether the constitutional right at issue was "clearly established," see Saucier, 533 U.S. at 201.

First, as discussed above, Ford's submission of facts, when viewed in the light most favorable to him, show a jury could find defendants violated his Fourth Amendment rights and defendant Officer Sanders violated his First Amendment rights. Accordingly, I must determine whether the constitutional right at issue was "clearly established." Id. A constitutional right is "clearly established," if it would be clear to a reasonable officer that his conduct was unlawful in the situation described by the plaintiff. Saucier, 533 U.S. at 202; Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2001). "If an official could have reasonably believed that his or her actions were lawful, the official receives immunity even if in fact the actions were not lawful." Forbes v. Twp. of Lower Merion, 313 F.3d 144, 148 (3d Cir. 2002). The officer may be entitled to immunity even if he is mistaken as to what the law requires. Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004).

Based on the facts alleged by Ford, it would have been clear to reasonable officers that their conduct was prohibited. Ford was protesting police brutality, and even considering his simple assault, reasonable officers would know it was unlawful to hold Ford down by his arms

13

and legs so that Officer Sanders could punch him in the face, and Sergeant Murphy could kick him in the head.  Compare Kopec v. Tate, 361 F.3d 772, 776-77 (3d Cir. 2004) (no qualified immunity where officer ignored the plaintiff's requests to loosen his handcuffs due to extreme pain when he was arrested for disorderly conduct); with Carswell v. Borough of Homestead, 381 F.3d 235, 242-44 (3d Cir. 2004) (qualified immunity to officer who fired at wanted suspect who escaped from an armed policeman and was running towards the officer); Brosseau v. Haugen, 543 U.S. 194, 195-97 (2004) (qualified immunity when officer fired her gun at the plaintiff who fled to a car, had a warrant for drug and other offenses, refused to get out of the car, and was looking for the keys to start the car because the officer believed she might retrieve a weapon and was concerned for the safety of others).

Thus, Ford's rights were "clearly established," and defendants' motion for summary judgment based on qualified immunity is denied.

An appropriate order follows.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERNST FORD,<br>Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OFFICER TERRANCE SANDERS, et al., | : | NO. 07-CV-00778 |
| Defendant. | : | |

**FILED**

FEB 1 5 2008

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

### ORDER

AND NOW, this 14th day of February 2008, upon consideration of Defendants' Motion for Summary Judgment and Plaintiff's Opposition to Defendants' Motion for Summary Judgment, it is hereby ORDERED for the reasons stated in the accompanying Memorandum Opinion that:

1. Defendant Officer Terrance Sanders's motion for summary judgment and qualified immunity is DENIED.  Defendant Sergeant Scot Murphy's motion for summary judgment and qualified immunity is DENIED, except for the First Amendment retaliation claim.

2. A final pretrial conference will be held Friday, February 15, 2008 at 9:30 a.m. in 3029 United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania 19106.

BY THE COURT:

_____
TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE